UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTINE ROBINSON, Administratrix of the Estate
of CHARLES ROBINSON (Deceased), and CHRISTINE        07 Civ. 5992 (DLC)
ROBINSON, Individually,

                              Plaintiffs,

                                                                             **DECLARATION**

    -against-

CAMPBELL HOLDER and CAMPBELL HOLDER &
ASSOCIATES,

                              Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK    }
                              } ss.:
COUNTY OF NASSAU    }

      PHILIP J. DINHOFER, an attorney admitted to practice law in the Court's of the State of New York, declares pursuant to 28 U.S.C. § 1746, that the following is true and correct, under penalty of perjury.

      1.    I am the attorney for the plaintiff's herein and am fully familiar with the facts and circumstances set forth herein.

      2.    I make this declaration in support of the instant application for a default judgement against the defendants.

      3.    This is an action for legal malpractice brought against the defendants who are an attorney and/or his law office that formerly represented the deceased, CHARLES ROBINSON, in a lawsuit brought against his employer, METRO-NORTH COMMUTER RAILROAD, under the aegis of the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. and the Civil Rights Laws, 42 USC § 1983. The defendants' maintained an office for the practice of law at 401 Broadway, New York, NY. The predicate lawsuit wherein the malpractice occurred was brought before the Supreme Court, New York County under index number 102456/95.

4.      The jurisdiction of this Court is based upon diversity of citizenship, pursuant to 28 U.S.C. Section 1332. The deceased and his Estate are citizens of the State of South Carolina. The defendant maintained his law office in New York County and currently resides at the Ogdensburg New York correctional facility. The amount in controversy exceeds $75,000.00.

5.      The essence of the malpractice claim is that despite being given multiple opportunities to do so the defendants failed to oppose a motion for summary judgment brought in the State action by METRO-NORTH and accordingly that action was dismissed by the Court (Exhibit 1, annexed hereto). Complicating the matter, the defendants failed to inform the plaintiffs of the fact that the State action had been dismissed. Defendants' further lied outright to the plaintiffs for some several years regarding the active status of that lawsuit, misleading Christine Robinson all the while regarding its dismissal. It was not until after the defendants' offices were closed following his conviction and incarceration of multiple crimes involving theft of millions of dollars in escrow money from other clients that the plaintiff first contacted me and upon my investigation that plaintiffs first learned of their former attorney's deceit and malpractice.

6.      Defendant HOLDER did ultimately file opposition papers sometime after the motion was ultimately deemed submitted (See, Exhibits 2 & 3, Affirmation in Opposition and Memorandum of Lw, respectively, annexed hereto), however in a well reasoned opinion, the Hon. Louis B. York, Justice Supreme Court, refused to accept those opposition papers (Exhibit 4, annexed hereto). The opposition papers are notably relevant to this action, however, in that by his affirmation defendant HOLDER attests to the facts and details, while his memorandum proves the legal merits of the underlying FELA and Civil Rights claims he brought in behalf of the plaintiffs.

7. Essentially these opposition papers by defendant HOLDER show by reference to factual evidence and documents that the deceased, CHARLES ROBINSON, allegedly failed a urine drug test. Despite his protests that the drug test produced a false arrest, the deceased's employer, Metro-North Railroad, coerced CHARLES ROBINSON to be admitted to a substance abuse treatment facility, Gracie Square Hospital, under the alternative threat of being fired from the job he held for some 16 years prior. Just three days after he was admitted, results of a re-test of the urine sample by another laboratory proved that the original results were in fact a "false" positive and that in fact CHARLES ROBINSON'S urine provided no evidence of his use of any drugs whatsoever.

8. Despite being possessed of proof that the urine test was clean, Metro-North Railroad refused to allow CHARLES ROBINSON to leave the drug treatment facility to which he had been confined. Metro-North had a contractual relationship with Gracie Square Hospital for purposes of "treating" those Metro-North employees with substance abuse problems, and therefore they too would not allow CHARLES ROBINSON to leave. (Because of their contractual relationship, for FELA purposes Gracie Square Hospital was an "agent" of Metro-North's and therefore Metro-North was responsible for their actions.)

9. During the remaining 27 days of his wrongful imprisonment at Gracie Square, CHARLES ROBINSON was placed in fear of his life by its other inmates and it appears as though he may have been physically assaulted and mentally abused all the while he was locked up in a psychiatric hospital that treated dangerous drug addicts. Approximately one week after he was discharged from Gracie Square, CHARLES ROBINSON's mother became sick and was hospitalized in South Carolina. While tending to his mother in South Carolina, CHARLES ROBINSON became ill himself, passed out and was hospitalized for some 13 days. As it turned

out, he had contracted a form of anemia that was easily treatable. As it turned out, blood tests taken while at Gracie Square Hospital had revealed this anemic condition, but nobody at Gracie Square ever mentioned it to CHARLES ROBINSON, nor did they ever implement any form of treatment, despite knowing of the condition. Had they done so, CHARLES ROBINSON would not have become ill, passed out or required the 13 day hospitalization while in South Carolina.

10. A summons and complaint sounding in legal malpractice, breach of contract and loss of services was filed before this Court on June 25, 2007 (Exhibit 5, annexed hereto). A copy of the Summons and Complaint were personally served upon the defendant CAMPBELL HOLDER on June 28, 2007 at the Ogdensberg Correctional Facility by personal service by Helga Ross (Exhibit 6, annexed hereto), and proof of such personal service upon defendant CAMPBELL HOLDER was filed on November 13, 2007. As indicated by the accompanying Clerk's Certificate (Exhibit 7, annexed hereto), to date the defendants have not answered the Complaint, and the time for answering the Complaint has expired. Plaintiffs' are therefore entitled to a default judgment.

11. The instant application seeks judgment of $15,000,000.00 against the defendants predicated upon the three causes of action stated by the complaint for $5,000,000.00 each. We also seek interest at _____% from October 4, 2000 (the date the State action was dismissed, which also constitutes the date of the defendants' breach of contract), for a total as of November 13, 2007 of $_____, as shown by the annexed Statement (Exhibit 8, annexed hereto), which is justly due and owing, and no part of which has been paid.

12. The disbursements sought to be taxed have been made in this action or will necessarily be made herein.

13. To your declarant's knowledge the defendants' are not a minor, mentally

incompetent nor in the military service of the United States.

14. We respectfully submit that based upon the foregoing we are entitled to entry of a default judgment. The defendants are a convicted attorney who well knows the consequences of his actions when he failed to appear and/or respond to the summons and complaint that was served upon him.

15. For this same reason we believe an inquest is not necessary in this matter as due to his default and failure to consent to the jurisdiction of this Court, we cannot acquire defendants' files regarding CHARLES ROBINSON which would otherwise be produced during discovery. Without defendants' files, plaintiffs herein lack access to vital records and things which severely prejudice our ability to prove damages at inquest. Most analogous to the instance of spoliation of evidence, the appropriate sanction under these circumstances is to award plaintiffs the damages the complaint seeks, in lieu of an inquest.

16. Moreover, the original client, CHARLES ROBINSON, is now dead and cannot give testimony in his own behalf regarding his pain and suffering. Additionally, the complaint in the State action (Exhibit 9, annexed hereto), seeks damages on some eight causes of action plus punitive damages all in excess of One Hundred Million ($100,000,000.00) Dollars. The complaint is verified by defendant HOLDER. By verifying the Complaint, the defendant HOLDER admits to the truth of all matters contained therein. Accordingly, defendant HOLDER admits that the claims of the deceased, CHARLES ROBINSON) far exceed the value of the sum sought by the complaint in this action and on this application for a default judgment.

17. In Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53-54 (2nd Cir. 1993) the Second Circuit stated:

> Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that on the matter of damages "the court may conduct such hearings or order such references as it deems necessary and proper." The rule "allows but does not require the district judge to conduct a hearing." Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir.1991), cert. denied, 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992) (citing Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir.1989)). In Fustok v. Conti Commodity Services, Inc., this Circuit held that it was not necessary for the district court to hold a hearing to fix damages after a default judgment had been entered where the court had "relied upon detailed affidavits and documentary evidence..."

[See also, Action S.A. v. Marc Rich & Co., Inc., 951 F.2d at 508 (no need to hold inquest on damages after default judgment had been entered where district judge was inundated with affidavits, evidence and oral presentations by opposing counsel).]

18. Based upon the foregoing authority, the death of the plaintiff, CHARLES ROBINSON, the inability to acquire access to the records and files of the defendant HOLDER which otherwise contain the evidence necessary for presentation at an inquest, the facts admitted to by defendants HOLDER's affirmation, his supporting memorandum of law, and his verified complaint, plaintiffs herein respectfully submit that the Court may within the exercise of its discretion, award plaintiff the damages requested by the Complaint herein, as an inquest is neither necessary nor required. Tamarin, Supra.

WHEREFORE, plaintiff requests the entry of Default and the entry of the annexed Judgment against defendants.

Dated: Rockville Centre, New York
November 13, 2007

By: Philip J. Dinhofer, #6940
**PHILIP J. DINHOFER, LLC**
Attorneys for Plaintiff(s)
77 N. Centre Ave. - Suite 311
Rockville Centre, NY 11570
516-678-3500