Supreme Court of the State of New York
County of New York                                          Index No.: 102456/95

Part 2
_____
CHRISTINE ROBINSON as Administratrix              **DECISION/ORDER**
of the Estate of CHARLES ROBINSON
(Deceased), and CHRISTINE ROBINSON,

                                                    Present:
                                                    Hon. Louis B. York
                           Plaintiffs,              Justice, Supreme Court

        - against -

METRO-NORTH COMMUTER RAIL ROAD, THOMAS
CLARK, MARK STESSNER, ALAIN STURGIS, and
JOHN HERRLIN jointly and severally,

                           Defendants.
_____

FILED OCT 11 2000 NEW YORK COUNTY CLERK'S OFFICE

    In this Order to Show Cause, attorney Campbell Holder seeks permission to submit late papers opposing defendants' motion either dismissing the complaint for lack of subject matter jurisdiction or granting summary judgment. It is rare that this court refuses permission to attorneys to file opposing papers, but the circumstances here warrant a denial. Therefore, the court refuses to sign the Order to Show Cause.

    Initially, with the court's consent, the parties entered into a stipulation governing the timetable for this motion. Metro-North was to serve its motion papers by June 2; plaintiffs were to oppose by June 26; and defendant was to reply by July 11. Adhering to this schedule, defendants served the motion on plaintiffs on June 2 and made it returnable in Room 130 on July 12, 2000.

1

By June 28, plaintiffs had not served Metro-North with any opposition papers. Therefore, movant called plaintiffs' counsel to see whether plaintiffs intended to oppose the motion. Movants did not hear back from Campbell Holder, plaintiffs' attorney; and, on July 5, movant faxed to him a similar query. Approximately 10 days after his papers were due, on July 6, 2000, Mr. Holder finally contacted movants and requested an adjournment of the motion. Movants agreed to the adjournment on the condition that plaintiffs contacted the court and obtained permission to deviate from the previously approved submission schedule. Under the new agreement, plaintiffs were to serve their opposition papers to movants in hand by July 20; the reply would be served by August 8; and the return date of the motion would be August 9. Movants confirmed this arrangement in writing to plaintiffs, in a letter dated July 10.

Plaintiffs did not respond to the letter or otherwise communicate with movants until July 19, the day before the opposition papers were due. By letter, plaintiffs' counsel indicated that he needed additional time to prepare their papers. In addition, counsel did not make a timely effort to adjourn the motion. By the time plaintiffs contacted the court to discuss the adjournment the motion had already been submitted to Part 2, this part, on default. Movants responded by telephone on July 19, and plaintiffs did not return the call. Finally, on July 21, 2000, movants' attorney wrote to the court, requesting that it address the situation.

Because of the vacation schedules of the parties and the court, there was no conference until the week of August 14. Counsel for both parties appeared at court to discuss the issue. Plaintiffs' counsel did not deny any of the above facts. He explained the

2

delay only by stating that he is a solo practitioner and he had been too busy to complete the brief on time. He proffered no excuse for his failure to communicate with his adversary and/or the court in a more timely fashion.

Clearly, this was not an adequate excuse. Moreover, based on counsel's prior conduct, movants were no longer willing to agree to any further extensions. Nonetheless, the court was reluctant to preclude plaintiffs from opposing a dispositive motion based on their counsel's negligence. Therefore, the court asked Campbell Holder, the attorney for plaintiffs, whether he was now ready to submit opposition papers. In response, plaintiffs' counsel stated that it was impossible to do so immediately, and that he needed an additional several weeks to prepare his opposition papers. After admonishing counsel, the court asked whether he could deliver the papers the following day. Counsel stated that he could not do so, that he needed at least two more weeks to prepare his opposition papers.

Under these circumstances, the court concluded that plaintiffs' counsel's delay was inexcusable, and that even the harsh penalty of depriving him of the opportunity to defend his clients' motion was justified. However, the court attorney presiding over the conference notified him that she would relay the information to me, and that if I felt otherwise he would be notified. However, I agreed that counsel should not be allowed to submit late papers.

Within a few days of the meeting described above, defendants' counsel called to confirm that I was not going to allow Mr. Holder to submit papers late. The court did not hear from Mr. Holder, on the other hand, until more than five weeks after the court conference. Then, without notifying the court or obtaining the permission of the court, Mr. Holder attempted to drop off papers opposing the motion. The part clerk refused to take

3

delay only by stating that he is a solo practitioner and he had been too busy to complete the brief on time. He proffered no excuse for his failure to communicate with his adversary and/or the court in a more timely fashion.

Clearly, this was not an adequate excuse. Moreover, based on counsel's prior conduct, movants were no longer willing to agree to any further extensions. Nonetheless, the court was reluctant to preclude plaintiffs from opposing a dispositive motion based on their counsel's negligence. Therefore, the court asked Campbell Holder, the attorney for plaintiffs, whether he was now ready to submit opposition papers. In response, plaintiffs' counsel stated that it was impossible to do so immediately, and that he needed an additional several weeks to prepare his opposition papers. After admonishing counsel, the court asked whether he could deliver the papers the following day. Counsel stated that he could not do so, that he needed at least two more weeks to prepare his opposition papers.

Under these circumstances, the court concluded that plaintiffs' counsel's delay was inexcusable, and that even the harsh penalty of depriving him of the opportunity to defend his clients' motion was justified. However, the court attorney presiding over the conference notified him that she would relay the information to me, and that if I felt otherwise he would be notified. However, I agreed that counsel should not be allowed to submit late papers.

Within a few days of the meeting described above, defendants' counsel called to confirm that I was not going to allow Mr. Holder to submit papers late. The court did not hear from Mr. Holder, on the other hand, until more than five weeks after the court conference. Then, without notifying the court or obtaining the permission of the court, Mr. Holder attempted to drop off papers opposing the motion. The part clerk refused to take the

3

papers, explaining that the court had denied permission for late submission.

Later that afternoon, Mr. Holder telephoned the courtroom and spoke to my court attorney. As if he knew nothing of the earlier exchange between his office and the part clerk, he asked why he had not heard from the court on the issue of whether he could submit opposition papers. He was now ready to hand in his papers, he continued. When he was told that the court's decision had been final, and that he would only have been notified if he had been granted permission to oppose the motion, Mr. Holder attempted to debate the point. The court attorney informed him that (1) even if he were correct, he still should have called much earlier to find out why he had heard nothing; and, (2) at any rate, I had determined not to allow Mr. Holder the opportunity to serve late papers and my decision was final.

The following week, despite this decision -- and, furthermore, nearly six weeks after the court first informed him that he did not have permission to file late papers -- Mr. Holder again attempted to file the opposition papers. This time, he attempted to proceed by order to show cause requesting an order granting him this permission. However, he did not follow the proper court procedure. An order to show cause must be initiated in the ex parte office. Instead, Mr. Holder dropped his papers directly at the courtroom.

The next day, an individual from Mr. Holder's office called and checked to see if the judge had signed the order to show cause. The part clerk informed her that (1) the order to show cause had not been filed properly and the court would not consider it; and (2) the judge had already emphatically denied Mr. Holder the right to file late papers, and his current conduct was in direct violation of the judge's prior directives. Subsequently, Mr.

4

Holder initiated the current order to show cause, which requests the same relief the court has denied on numerous occasions.

Clearly, Mr. Holder has been remiss in not completing and attempting to serve his opposition papers until approximately three months after their due date, and over three-and-a-half months after he received the motion papers from his adversary. Perhaps more troubling than his extreme untimeliness, however, are other aspects of his behavior. The court finds that, throughout this situation, Mr. Holder has acted without courtesy, consideration or respect toward his adversaries; and, has at best carelessly -- and at worst wilfully -- disregarded the court's repeated directives. If Mr. Holder had been communicative and had behaved responsibly throughout, the court might have been willing to give him some extension, even to have granted the current application on the condition of a sanction. See CPLR Article 31. However, in light of the fact that Mr. Holder repeatedly ignored his adversary's communications, disregarded court deadlines, and attempted to evade rather than obtain extensions of the existing deadlines and rules, the court cannot grant his current request.

DATED: 10/6/00

_____
Louis B. York, J.S.C.

LOUIS B. YORK

FILED
OCT 11 2000
NEW YORK COUNTY CLERK'S OFFICE

5