UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTINE ROBINSON, Administratrix of the Estate
of CHARLES ROBINSON (Deceased), and CHRISTINE                    07 Civ.  5992 (DLC)(HBP)
ROBINSON, Individually,

                      Plaintiffs,

    -against-                                            **PROPOSED FINDINGS
                                            OF FACT AND
CAMPBELL HOLDER and CAMPBELL HOLDER &                            CONCLUSIONS OF LAW**
ASSOCIATES,

                      Defendants.
------------------------------------------------------------------X


## PRELIMINARY STATEMENT

       This is an action for legal malpractice brought against the defendants who are an attorney

and/or his law office that formerly represented the deceased, CHARLES ROBINSON, in a

lawsuit brought against his employer, Metro-North Commuter Railroad, under the aegis of the

Federal Employers' Liability Act, 45 U.S.C. § 51, et seq.. The predicate FELA lawsuit wherein

the malpractice occurred was brought before the Supreme Court, New York County under index

number 102456/95.

       By order dated December 7, 2007 the Hon. Denise L. Cote, granted plaintiff a default

against the defendants and referred this case to this Court for an inquest on damages.  By Order

dated December 21, 2007 this Court requested the within submission, to be supported by

affidavit and/or other such evidentiary proof.

       The defendant, CAMPBELL HOLDER, is a disbarred attorney who was convicted of

crimes relating to, inter alia, his unlawful conversion of client money held in escrow.  He is

currently confined at the Ogdensberg Correctional Facility in Ogdensberg, New York, and is

expected to remain imprisoned there until at least April 2010.  We note this for the Court while

pointing out that the factual events occurring with regard to the underlying FELA action took place some fifteen years ago in approximately February 1993. CHARLES ROBINSON passed away on February 12, 1996, before his deposition could be had in his underlying FELA action. Prior to his incarceration, the defendants' maintained an office for the practice of law at 401 Broadway, New York, NY. That office is no longer in existence. Accordingly, given the age of the underlying action and without CAMPBELL HOLDER'S cooperation with these proceedings, inclusive of his tender of his files which contain relevant factual information regarding CHARLES ROBINSON's underlying FELA matter and more significantly the damages he suffered therein, we have been effectively thwarted by this defendant's contemptuous default in presenting this Court with the kind of evidentiary materials on damages we would otherwise have preferred.

Since the real plaintiff in interest, CHARLES ROBINSON, is deceased there is no one who can relate to the court with first hand knowledge regarding much of the pain and suffering endured by CHARLES ROBINSON as a result of his employer railroad's negligence. Rather, the mainstay of the knowledge we have with regard to this matter is that which we have gleaned from the Court file had in the aforementioned State Court FELA action that defendant CAMPBELL HOLDER brought in the deceased's behalf. Inasmuch as the mainstay of that Court's files relate to a motion for summary judgment, which concerned itself with liability issues, there are but a few documents in that Court's record which relate to damages per se.

Interestingly, however, of relevant importance amongst the documents contained within the State Court's files are those drafted by the defendant CAMPBELL HOLDER himself, which are either verified or sworn to as truthful by him, and which are based upon evidentiary

information contained within his files.   Also within the State Court's files is the deposition transcript of the plaintiff Administratrix, CHRISTINE ROBINSON.  Copies of the Amended Verified Complaint, CAMPBELL HOLDER Affidavit and CHRISTINE ROBINSON Deposition transcript are attached hereto for the Court's consideration as Exhibits 1, 2 & 3, respectively, in fulfillment of this Court's mandate to provide an "affidavit or other material of evidentiary weight."  We respectfully submit that the documents sworn to by the defendant, HOLDER, constitute his admissions against which he is estopped from refuting both because they were sworn to by him and on account of his default & failure to provide discovery inclusive of his files.  The Deposition transcript of the Administratrix, which is based on CHRISTINE ROBINSON's first hand knowledge of the events involving her husband, stands in corroboration of all that was admitted by defendant CAMPBELL HOLDER.

Regrettably, the State Court's files are kept in a satellite archive whose copy facilities leave much to be desired.  For this reason, we were relegated to the use of a handheld digital camera to take photographs of each page of the aforementioned relevant documents contained within the State Court's files, and therefore it will be readily apparent that the copy quality of those copies varies from legible to  wanting.  In alternative to these copies, we note that we were advised by a clerk at the State's archive that they will deliver the file to this Court's Chambers upon receipt of a "So Ordered" Subpoena Duces Tecum.  Accordingly, should this Court require better clarity of any or all of the records annexed in exhibit hereto (and/or for purposes of its own review of the State Court's files) we respectfully request that the Subpoena Duces Tecum which accompanies Your Chamber's courtesy copy of this submission be signed by the Court so that we may serve it on the State and thereby have the State Court's records delivered to this Court's Chambers for consideration on this inquest on damages.

## PROPOSED FACTS

The jurisdiction of this Court is based upon diversity of citizenship, pursuant to 28 U.S.C. Section 1332.  The deceased and/or his Estate are citizens of the State of South Carolina.  (See Exhibit 3.5.)  The defendant maintained his law office in New York County and currently resides at the Ogdensburg New York correctional facility.  The amount in controversy exceeds $75,000.00.

The essence of the malpractice claim is that despite being given multiple opportunities to do so the defendants failed to oppose a motion for summary judgment brought in the State action by Metro-North Commuter Railroad and accordingly that action was dismissed by the State Court  (Exhibit 4, annexed hereto).  Complicating the matter, the defendants failed to inform the plaintiff Administratrix of the fact that the State action had been dismissed.  Defendants' further lied outright to the plaintiff for some several years regarding the active status of that lawsuit, misleading CHRISTINE ROBINSON all the while regarding its dismissal.  It was not until after the defendants' offices were closed following his conviction and incarceration of multiple crimes involving theft of millions of dollars in escrow money from other clients that the plaintiff Administratrix first contacted this office and upon this writer's investigation that the plaintiff Administratrix first learned of her former attorney's deceit and malpractice.

Defendant CAMPBELL HOLDER did ultimately file opposition papers to the motion for summary judgment some several weeks after the motion had been marked submitted (See CAMPBELL HOLDER Affidavit, Exhibit 2 and his supporting Memorandum of Law, Exhibit 5, annexed hereto), however in a well reasoned opinion, the Hon. Louis B. York, Justice Supreme

Court, refused to accept those opposition papers (Exhibit 6, annexed hereto).  The opposition

papers are notably relevant to this action, however, in that by his affidavit defendant

CAMPBELL HOLDER admits and attests to the facts and details, while his memorandum

proves the legal merits of the underlying FELA and Civil Rights claims he brought in behalf of

the deceased plaintiff, CHARLES ROBINSON.

The CAMPBELL HOLDER Affidavit shows by reference to factual evidence and

documents that on February 8, 1993 the deceased, CHARLES ROBINSON, allegedly failed a

urine drug test.  Despite his protests that the drug test produced a false result, on March 1, 1993

the deceased's employer, Metro-North Railroad, negligently, carelessly and extortively coerced

CHARLES ROBINSON to be admitted to a psychiatric hospital for substance abuse treatment

known as Gracie Square Hospital, under the compulsion of an overt threat of being fired from

the job he held for some 16 years prior thereto.  Just three days after he was admitted to Gracie

Square Hospital, results of a re-test of the urine sample by an independent reference laboratory

proved that the original results were in fact a "false" positive and that in fact CHARLES

ROBINSON'S urine provided no evidence of his use of any drugs whatsoever.

Despite being possessed of proof that the urine test was clean, which fact was supported

by the letters of Carl F. Needles, MD, dated March 4 & 5, 1993, Exhibit 7, annexed hereto,

Metro-North Railroad refused to allow CHARLES ROBINSON to leave the drug treatment

facility to which he had wrongfully been confined.  Metro-North had a contractual relationship

with Gracie Square Hospital for purposes of "treating" those Metro-North employees with

substance abuse problems, and for this reason, notwithstanding their actual receipt of proof that

CHARLES ROBINSON had in fact tested negative for drug use, Gracie Square Hospital

6

bastardized its legal and ethical obligations to its patient and would not allow CHARLES

ROBINSON to leave absent the unnecessary consent of Metro-North Railroad!!!  (Because of

the nature of their contractual relationship, for FELA purposes Gracie Square Hospital was at the

least an "agent" of Metro-North Railroad's and therefore on account of the "non-delegable" duty

imposed upon the Railroad by the FELA, Metro-North is likewise responsible for their agents

actions.  45 USC § 51.)

During the remaining 27 days of his wrongful imprisonment at Gracie Square,

CHARLES ROBINSON was placed in fear of his life by its other inmates and it appears as

though he may have been physically assaulted, threatened and mentally abused by both the

inmates and hospital staff all the while he was locked up in a psychiatric hospital that treated

dangerous drug addicts who were undergoing withdrawal.  Contemporaneously with his Mrach

29, 1993 discharge from Gracie Square Hospital, CHARLES ROBINSON's mother became sick

and was hospitalized in South Carolina.  On or about April 2, 1993, just four days after he was

released from Gracie Square Hospital and while visiting his elderly ill mother in South Carolina,

CHARLES ROBINSON became ill himself, passed out and was hospitalized for some 11 days

for a blood abnormality.  As it turned out, he was diagnosed with a form of anemia that was

easily treatable.  Paradoxically, blood tests taken while at Gracie Square Hospital had revealed

this anemic condition, but nobody at Gracie Square Hospital ever treated CHARLES

ROBINSON for this potentially fatal blood disorder despite knowing of the condition.  Had they

done so, CHARLES ROBINSON would not have become ill, passed out or required the 11 day

hospitalization while in South Carolina.  See, September 26, 1994 letter/report of Kathy Serino,

RN, of the State of New York's, Commission on Quality of Care for the Mentally Disabled,

Exhibit 8, annexed hereto.

7

## **CONCLUSIONS**

It is respectfully submitted that based upon the defendant's own admissions, the deposition of the Administratrix, and all the other evidence adduced herein that this Court find that the deceased CHARLES ROBINSON suffered substantial and significant injury and damage to his psyche and physical well being as a result of Metro-North's negligent coercion which extorted CHARLES ROBINSON'S unnecessary admission into Gracie Square Hospital, a psychiatric hospital. CHARLES ROBINSON's mental and physical safety were profoundly compromised when he was wrongfully forced into this inpatient program where he was surrounded by drug addicts who were experiencing their own withdrawal symptoms and who behaved irrationally, inflicted physical violence and/or the chronic threat of such violence upon CHARLES ROBINSON. For those 29 days, the innocent CHARLES ROBINSON was terrorized at Gracie Square Hospital. This guiltless man did not deserve to be institutionalized with the likes of these most depraved socially deviant habitual drug abusers, especially once it was known that an independent reference laboratory proved his urine specimen negative for drugs.

Moreover, while at Gracie Square Hospital, CHARLES ROBINSON's diagnosed anemia was not treated despite his repeated complaints of shortness of breath and weakness. While related to his ongoing anemia, these symptoms and complaints were also demonstrative of an exacerbation of CHARLES ROBINSON's anxiety and fear caused by his forced wrongful confinement in a psychiatric hospital for alleged drug abuse for a full month, notwithstanding proof that the damning blood test was proven to be false within three days of his admission to

8

Gracie Square Hospital, and the ongoing harassment and threats/acts of violence perpetrated against him by other inmates confined at Gracie Square Hospital.  All of the foregoing caused CHARLES ROBINSON unimaginable pain and suffering, while he was forcefully trapped in the most surreal Kafkaesque dilemma of having to keep and prove his sanity amidst the horrifically nightmarish bedlam and distortion of reality with which he was confronted while being wrongfully imprisoned for a full month at his Railroad employers insistence at a psychiatric care facility, Gracie Square Hospital, while undergoing treatment for a substance abuse problem that was independently proven to be non-existent.  So too, following his discharge from Gracie Square Hospital by just four days, CHARLES ROBINSON was again forced to relive the anxiety and horrors of forced confinement and institutionalization all the while he was thereafter kept, confined and admitted to a South Carolina hospital for an additional 11 days as a result of Gracie Square Hospital's failure to treat CHARLES ROBINSON's anemia, a potentially fatal medical condition of which Gracie Square Hospital had actual notice.

## **DAMAGES**

In his verified amended complaint defendant admits that the following damages are appropriately warranted:

      a)      On the first cause of action ... the sum of FIVE MILLION ($5,000,000.00) DOLLARS;

      b)      On the second cause of action ... the sum of ONE MILLION ($1,000,000.00) DOLLARS;

      c)      On the third cause of action ... the sum of ONE MILLION ($1,000,000.00) DOLLARS;

    d)      On the fourth cause of action ... the sum of TWO MILLION ($2,000,000.00) DOLLARS;

    e)      On the fifth cause of action ... the sum of ONE MILLION ($1,000,000.00) DOLLARS;

    f)      On the sixth cause of action ... the sum of ONE MILLION ($1,000,000.00) DOLLARS;

    g)      On the seventh cause of action ... the sum of ONE MILLION ($1,000,000.00) DOLLARS;

    h)      On the eighth cause of action ... the sum of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS; and

    i)      Punitive damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

In view of his contemptuous default herein and on account of his admission setting forth the details justifying the same, we respectfully request that the Court render an award of damages in the amounts called for by the Amended Complaint as verified by the defendant, CAMPBELL HOLDER, himself.  No one knew better the value of CHARLES ROBINSON'S FELA lawsuit than the defendant CAMPBELL HOLDER, the attorney who drafted all the papers in that lawsuit inclusive of the Verified Complaint therein which explicitly stated these amounts.  These are the amounts the defendant, CAMPBELL HOLDER, knowingly ascribed as the value of the FELA action and now on account of his own malpractice which "killed" that lawsuit, defendant CAMPBELL HOLDER must be held to account for the full value he himself set for his own negligent misdoings.

Alternatively arguendo, were the Court to reject the foregoing request based upon the defendant's admissions as inappropriate, we respectfully request that the Estate of CHARLES ROBINSON be awarded the sum of $50,000.00 for each day that he was wrongfully trapped at

10

at Gracie Square Hospital (for some 29 days) and needlessly confined when admitted at the

South Carolina Hospital (for some 11 days) for a total period of confinement of 40 days, which

sum computes to the total of $2,000,000.00, plus punitive damages on account of the outrageous

misconduct of this disbarred attorney.

Dated: Rockville Centre, New York
      February 12, 2008                          Respectfully submitted,

*Philip J. Dinhofer*

By: Philip J. Dinhofer, #6940
**PHILIP J. DINHOFER, LLC**
Attorneys for Plaintiff(s)
77 N. Centre Ave. - Suite 311
Rockville Centre, NY 11570
516-678-3500

TO:    CAMPBELL HOLDER, Din #:  07R0219
          Defendant, *Pro Se*
          Ogdensburg Correctional Facility
          One Correction Way
          Ogdensburg, NY 13669.2288