SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
CHRISTINE ROBINSON, as Administratrix of
The Estate of CHARLES ROBINSON (Deceased)         Index No. 102456/95
and CHRISTINE ROBINSON

                  Plaintiffs,

     -against-

METRO-NORTH COMMUTER RAILROAD, THOMAS
CLARK, MARK STESSNER, ALAIN STURGIS, and
JOHN HERRLIN, jointly and severally

                  Defendants.
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT METRO-NORTH'S MOTION FOR SUMMARY JUDGMEMT

### PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of law in opposition to Defendant, Metro-North Commuter Railroad ("Defendant"), motion for summary judgment or dismissal from the instant action. Material and triable disputes of fact exist, making this case improper for summary judgment and Plaintiffs herein have pleaded facts to make this case improper for dismissal.

### PROCEDURAL HISTORY

This is an action for personal injuries sustained by and the wrongful death of Charles Robinson ("Plaintiff"), a former conductor employed by Defendant Metro North Commuter Railroad. On February 1, 1995, Plaintiff served the Defendants named in the caption above, with a Summons and Verified Complaint, asserting claims for negligent implementation and supervision of Defendant Metro-North's drug rehabilitation program, and negligent infliction of emotional distress. Plaintiff alleged that he was injured as a result of false positive drug tests administered by Defendants and

then Defendant forced him to participate in its in-patient and outpatient drug rehabilitation program for almost one year.

On March 14, 1997 Defendants moved for an order dismissing Plaintiffs' claims because they were not meritorious in that they were preempted by the Railway Labor Act and could not be maintained under the Federal Employer's Liability Act. **(See Exhibit 2, pp. 4 – 8)**[1] Defendant also moved for an order pursuant to 3215(c). Plaintiff opposed the motion and cross-moved for an order (i) pursuant to CPLR 3215(a) granting him a default judgment or in the alternative (ii) for an order substituting as Plaintiff Christine Robinson, as Administratrix of the Estate of Charles Robinson since Charles Robinson is now deceased.

The court denied Defendant's motion in its entirety and granted Plaintiff's motion to the extent that it directed that Christine Robinson, as the Administratrix of the Estate of Charles Robinson, be substituted as Plaintiff in the above-entitled action in the place and stead of the Plaintiff, Charles Robinson. **(See Exhibit 1)**

The court also directed that all papers, pleadings and proceedings in the action be amended by substituting the name of Christine Robinson as Administratrix of the Estate of Charles Robinson, deceased, as Plaintiff in the place and stead of Plaintiff, Charles Robinson. The court also directed Plaintiffs to serve upon Defendants their amended complaint and Defendants to answer thereafter. **(See Exhibit 1)**

On October 20, 1997, Defendants again moved for an order dismissing the second, seventh and eighth causes of action as stated in the amended complaint. In an order dated April 22, 1998 the court granted the motion and ordered the remainder of the action to continue. **(See Exhibit 3)**

Defendant now moves for an order pursuant to CPLR 3211(a)(2) dismissing the complaint for lack of subject matter jurisdiction or alternately an order pursuant to CPLR 3212 for summary

---

[1] All Exhibits referred to in this Memorandum of Law are attached to the affidavit of Campbell Holder submitted herein in opposition to Defendant's instant motion.

judgment on the grounds that (1) Plaintiffs' claims are preempted by the Railway Labor Act and (2) Plaintiffs' action cannot be maintained under the Federal Employer's Liability Act ("FELA"). Defendant's motion must be denied in that these issues have already been judicially determined and settled by a judgment rendered in this action and, therefore, Defendant is collaterally estopped from relitigating these issues. **(See Exhibit 1)** In addition, as shown below not only does this court have jurisdiction over Plaintiffs' claims but material and triable issues of fact exist.

## STATEMENT OF FACTS

A detailed account of the relevant facts are contained in paragraphs 6 – 39 of the Affidavit of Campbell Holder, with documentary evidence attached, submitted in opposition to the instant motion. However, a brief overview of the relevant facts shows that from October 2, 1992 until his death on February 12, 1996 Defendant's outrageous conduct caused Plaintiff to experience physical and emotional injuries, which in turn aggravated his non-drug-abuse related illness, shortened his life, robbed him of whatever peace of mind and serenity he otherwise would have been able to achieve during his illness, and ruined his reputation in his community and among his co-workers by alleging he was a drug abuser, despite the fact that Defendant had obtained reliable information that Plaintiff had not abused illegal drugs.

In July 1992 Plaintiff was in a car accident and became disabled because of his injuries. He thereafter underwent several fitness-for-duty medical examinations, which were conducted by Dr. John Herrlin, Defendant's medical examiner. Plaintiff's urine tests as administered by Dr. Herrlin were all negative except for the October 2, 1992 test. Plaintiff denied that he had ingested illegal drugs and repeatedly requested that the urine sample, which showed a false positive reading for illegal drug use, be retested by an independent laboratory. Defendant denied Plaintiff's requests and then coerced him into an outpatient drug abuse treatment program or disciplinary proceedings

would have been commenced against him, which more than likely would have resulted in the loss of his 16-years of employment with Defendant. On or about October 21, 1992 Plaintiff began to participate in Defendant's Employee Assistant Program ("EAP") and on October 30, 1992 Defendant enrolled Plaintiff in an outpatient drug treatment program and from that date he was tested for illegal drug use at least twice a week until he was taken out of the EAP in August 1993. Defendant's alleged that Plaintiff's February 8, 1993 urine sample was positive for cocaine, which a retest by an independent reference laboratory showed to be negative. **(See Exhibits 11, 14 and 22)**

The records reveal that Plaintiff was never addicted to drugs and was always drug-free except for the occasional use of marijuana in 1977 – 1978. Plaintiff has never admitted to the use of cocaine during the periods that Defendant coerced him into outpatient and in-patient drug abuse treatment, neither does Defendant possess any reliable evidence that he has ever used cocaine. **(See Exhibits 7, 8, 9, 10, 11, 14, 15, 16, 17, 18 & 19)** In regard to alcohol, Plaintiff admitted that he was a social drinker and the record shows that Plaintiff was never affected by alcohol to any degree whatsoever during his 16 years of employment with Defendant.

As a result of the false positive reading of his February 8, 1993 urine sample, Defendants forced Plaintiff to be an inpatient, for one month, at Gracie Square Hospital ("Gracie Square") a pyschiatric facility **(Exhibit 6, Clark Depo. p. 22 lines 3-5)** where his health was not properly tended, his symptoms for severe anemia, of which Defendant and its agents were fully aware, were ignored and he was not informed of the severity of his blood abnormality. On April 4, 1993, four days after he was released from Gracie Square and while visiting his elderly ill mother in South Carolina Plaintiff collapsed and had to be hospitalized for his blood abnormality for 11 days. **(See Exhibits 12, 17, 18 & 19)**

Gracie Square Hospital accepted Plaintiff as an inpatient in its drug abuse treatment program per Defendant's referral and even though within 3 days of his confinement to Gracie Square, both

4

Gracie Square and Defendant had reliable information that the re-test of February 8, 1993 urine sample was negative for use of illegal drugs. Gracie Square's records state that Defendant was "adamant" that Plaintiff should not be released but should be confined in its institution for an additional 24 days. (See Exhibit 15, p. 2 para. 3) Gracie Square released Plaintiff pursuant to Defendant's direction even though it informed Defendant that Plaintiff should be discharged when it learned of the negative result of the retest of his urine sample which showed positive for cocaine. Also, Defendant's records show that it directed Gracie Square not to release Plaintiff until March 29, 1993. **(Exhibit O, p. 846 attached to NLG Aff'd. Def's. Mot.)**

Plaintiff's physical safety was compromised when Defendant forced him into an inpatient program where he was surrounded by drug addicts who were experiencing withdrawal symptoms and who behaved irrationally and threatened Plaintiff with violence and terrorized him. Plaintiff's anemia was not treated while he was in Gracie Square and the anxiety and fear caused by the forced treatment for alleged drug abuse, his confinement in a psychiatric facility and the threats of violence against him by other inmates worsened his illness causing him extreme pain and suffering and his eventual collapse and hospitalization upon his release from Gracie Square.

The facts presented show that Defendant Metro-North failed to supervise the employees and agents who implemented its EAP in regards to Plaintiff, failed to prevent its employees from threatening and bullying Plaintiff, failed to ensure that the allegations of drug use by Plaintiff were properly and fairly investigated, failed to prevent its employees from forcing Plaintiff into drug abuse treatment and confining him for such treatment in a psychiatric institution even though it had reliable evidence that Plaintiff had not abused drugs, failed to prevent its employees from confining Plaintiff in a psychiatric institution despite the fact that its employees told Plaintiff that if the retest of his February 8, 1993 urine sample was negative, he would be released from the psychiatric institution, failed to treat Plaintiff or release him so that he could obtain medical treatment for his blood

5

abnormal behavior in the workplace, failed to prevent its employees from threatening and harassing Plaintiff to continue to participate in outpatient treatment for drug abuse while he was repeatedly hospitalized for his non-drug-abuse illness, failed to prevent its EAP employees from releasing Plaintiff from EAP in a manner that threatened his 16 years of employment with Defendant, failed to prevent employees from ruining Plaintiff's employment opportunity at Conrail and Amtrak and failed to take steps to prevent its employees from harming Plaintiff physically and emotionally.

The facts herein demonstrate that the Railway Labor does not preempt the instant action Act and it is sustainable under the Federal Employer's Liability Act, therefore, Defendant's motion for summary judgment and dismissal for lack of subject matter jurisdiction of the instant action should be denied.

## POINT I

### DEFENDANT IS COLLATERALLY ESTOPPED FROM ASSERTING THAT PLAINTIFFFS' CLAIMS ARE PREEMPTED BY THE RAILWAY LABOR ACT AND ARE NOT SUSTAINABLE UNDER A PROPER APPLICATION OF FELA

It is settled that the doctrine of collateral estoppel is invoked when there is a sufficient identity of issues between the current action and the prior one and/or when the material facts of questions in issue have been judicial determined and conclusively settled by a judgment rendered in the action. Fleischer v. Uccelini, 81 Misc.2d 22, 365 N.Y.S. 2d 722 (1975); Kartiganer Associates, P.C. v. Wehran Engineering, P.C., 92 A.D.2d 911, 460 N.Y.S.2d 124 (1983); Green v. Sante Fe Indus., 70 N.Y.2d 244; Firedoor Corp. v. Merlin Indus., 86 A.D. 2d 577.

On March 14, 1997 Defendant moved for an order pursuant to CPLR 3215(c) to dismiss the instant action. In that motion, citing Hagerman v. Metro-North Commuter Railroad, 1995 WL 614562 (S.D.N.Y), Defendant argued, as it does here, that Plaintiff's claims are not meritorious

6

because they are preempted by the RLA and are not sustainable under FELA. In its memorandum of law in support of that motion, Defendant stated:

> . . . To recover for an injury under FELA, plaintiff must show an actual physical injury. To recover for the negligent infliction of emotional distress, he must show an actual injury with attendant emotional distress, or, in the absence of actual injury, emotional distress resulting from his being in the "zone of danger" of imminent bodily harm. Gottshall v. Consolidated Railroad Corp., 512 U.S. 532 (1994). The injury alleged here -- Robinson's non-occupational illness and the alleged "malpractice" of the individual defendants -- is simply not the sort of injury that is compensable under FELA.[5]
>
> Second, even if defendants were somehow negligent in requiring Robinson to undergo substance abuse treatment as a condition of his continued employment with Metro-North, there can be no casual relationship between that negligence and Robinson's illness and eventual death from leukemia. See e.g., Moody v. Maine Central R.R., 823 F.2d 693 (1st Cir. 1987); Robert v. Consolidated Rail Corp., 832 F.2d 3 (1st Cir. 1987); Barnes v. Soo Line R.R. Co., No. 90 C 2755, 1991 WL 222200 (N.D. Ill. Oct. 23, 1991), aff'd without op, 996 F.2d 1219 (7th Cir. 1993). See also Atchinson, Topeka & Santa Fe Ry. Co. v. Toops, 281 U.S. 351 (1930).
>
> Third, by his own admissions throughout the Complaint, Metro-North did not compel Robinson to enroll in EAP or to obtain or continue outpatient or in-patient treatment; he did so freely to avoid discipline in the form of dismissal (Compl., para 29). The only duress he was ever under was the threat that he would be fired if he did not undergo rehabilitation. Disciplinary action taken as a result of an allegedly "false positive" drug screen does not state a claim under the FELA for the negligent infliction of emotional distress. Hagerman v. Metro-North Commuter R.R., No. 94 Civ. 6356 (DLC), 1995 WL 614562 (S.D.N.Y. Oct. 19, 1995).

---

[5] These allegations are at best ironic, as the Complaint refers to plaintiff's private physician, who represented to EAP that plaintiff did not have a substance abuse problem (Compl., para 32), but who had failed to detect his blood disorder, as his anemia was discovered as a result of blood tests conducted by the hospital treating him for substance abuse (id., para 33). There can be no FELA claim for his personal physician's malpractice. 45 U.S.C. Section 51.

7

>Even if a test were in fact a "false positive," there is no claim under the FELA for the negligent infliction of emotional distress arising out of allegedly negligently administered drug tests; for employees covered by a collective bargaining agreement, such claims are not "independent" claims under the FELA, but are, rather, mislabeled claims under the Railway Labor Act, 45 U.S.C. SS 151, et seq., which preempts them. E.g., Milan v. Herrlin, 819 F.Supp. 295 (S.D.N.Y. 1993); see also Campbell v. Pan Am. World Airways, Inc., 668 F.Supp. 139 (E.D.N.Y. 1987). **(See Exhibit 2, pp. 4 - 8)**

In an order dated July 17, 1997 the court distinguished the facts in the instant action from the facts in Hagerman v. Metro-North Commuter Railroad, supra, and denied Defendants' motion stating:

>With respect to the claims, contrary to defendants' allegations plaintiffs have demonstrated they are meritorious. The Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, under which plaintiffs bring these claims, provides a right of action by railroad employees for injuries caused by the negligence of their employers. While defendants apparently recognize that a claim for negligent infliction of emotional distress is cognizable under FELA, they contend that plaintiff has not alleged an injury, or emotional distress resulting from him being in the "zone of danger of physical impact" (Hagerman v. Metro-North Commuter Railroad, R.R., F.Supp. ___, No 94 Civ. 6356 (DCL), 1995 WL 614562 [SDNY 1995]).
>
>However, unlike the fact in Hagerman, Robinson has alleged that he was coerced into defendants' drug rehabilitation program, hospitalized, and given medical and psychological treatment, despite the fact that defendants were admonished that the results of his drug test were unreliable.
>
>Upon review of the papers and the facts and circumstances presented, this Court finds no basis to warrant contravention of the well-settled policy of permitting actions to be resolved on their merits (Bullard v. Billings & Spencer, Co., 36AD2d 71).
>
>Accordingly, it is
>
>Ordered that defendants' motion to dismiss plaintiffs' complaint is denied. **(See Exhibit 1)**

In Points I, II, III, and IV of its memorandum of law in support of the instant motion, Defendant now seeks to relitigate the identical issues which the court has determined adversely to it in a prior motion in this action, in that in the instant motion Defendant argues that Plaintiffs' fail to

8

state a claim under FELA and their claims are preempted by RLA. In making this argument Defendant again relies on Hagerman v. Metro-North Commuter Railroad, supra, as in its prior motion in this action, which the court denied. **(See Exhibits 1 and 2)** Therefore, because these issues have been judicially determined and conclusively settled by a judgment rendered in this action and Defendant has taken no appeal therefrom, Defendant is collaterally estopped from relitigating the issues of whether the RLA preempts Plaintiffs' claims and whether Plaintiffs' claims are sustainable under FELA. Capalbo v. Capalbo, 148 A.D.2d 705, 540 N.Y.S.2d 206. In addition, Defendant has not sought leave of court for an order pursuant to CPLR 2221 to reargue and reconsider its July 17, 1997 decision and order.

However, if the court should find that Defendant is not collaterally estopped from relitigating the issues of whether Plaintiffs cannot sustain a cause of action under FELA and whether the RLA preempts Plaintiffs' claims, then Plaintiffs' opposition to these claims made in Points I, II, III and IV in Defendant's memorandum of law in support of its instant motion is discussed in Points II – V below.

### POINT II

### PLAINTIFFS' CLAIMS MUST NOT BE DISPOSED OF BY SUMMARY JUDGMENT OR DISMISSAL

Summary judgment is a drastic remedy and should not be granted where there is any doubt concerning whether a material and triable issue of fact exists; if there is any arguable issue of fact, or if the issue is fairly debatable. 97 N.Y. Jur.2d Summary Judgment 22. To survive a motion for summary judgment, the nonmovant need only show there is a genuine issue of fact; all facts must be viewed in the light most favorable to the nonmoving party; and the nonmoving party must be given the benefit of all reasonable inferences. Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). Summary judgment is improper when the court merely believes the opposing party is unlikely to

prevail on the merits; the responsibility of the court is to determine if there are issues to be tried and not to try them. American Intern. Group v. London Am. Intern, 664 F.2d 348, 351 (2d Cir. 1981).

The Second Circuit has held that summary judgment was improper where an employee was injured due to the railroad's failure to maintain a safe work place, despite the fact that it knew that its railyard was frequented by alcoholics, drug addicts and suspicious persons. Syverson v. Consolidated Rail Corp., 19 F.3d 824 (2d Cir. 1994). In denying defendant railroad's motion for summary judgment, the Syverson Court stated that ordinary negligence standards are relaxed under FELA and a jury might resolve disputed material facts in a way that could provide FELA liability. Id.

Dismissal is also inappropriate in the case at bar as Plaintiffs have certainly alleged enough facts on which to base their claims. Whether Defendant is liable for its actions and what constitutes "reasonable" conduct under the circumstances in this case is a question to be answered at trial.

## POINT III

### PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE RAILWAY LABOR ACT

Defendant's instant motion argues that Plaintiff's employment with it was covered by a Collective Bargaining Agreement, ("CBA") therefore, Plaintiffs claims are preempted by the Railway Labor Act ("RLA") because the claims are in relation to a grievance about Plaintiff's treatment under the CBA. Defendant further argues that under the RLA Plaintiffs' claims fall into the category of a minor dispute and the RLA requires that Plaintiff or his union progress to final and binding arbitration. Defendant further asserts that the resolution of Plaintiffs' claims would require interpretation of the CBA, therefore, the RLA preempts Plaintiffs' claims. In support of theses arguments Defendant cites Mack v. Metro North Commuter, R.R., 876 F.Supp. 490 (S.D.N.Y. 1994).

10

Mack v. Metro-North Commuter, R.R., 878 F.2d 673; Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260, 114 S.CT. 2239, 129 L.Ed.2d 203 (1994) and Harris v. Hirsh, 186 N.Y.2d 207.

However, standards on which Defendant relies for determining when a State-law claim is really a disguised "minor dispute" are no longer controlling. Harris v. Hirsh, 186 N.Y.2d 207, 212-213, 630 N.Y.S.2d 701. The question to be addressed here is whether Plaintiffs' State-law tort claims depend for their resolution on an interpretation or construction of actual terms contained in the CBA. Based on the holdings in Harris v. Hirsh, supra and Hawaiian Airlines, Inc., v. Norris, supra; the answer to that question in the instant case is in the negative.

In Hawaiian Airlines, Inc. v. Norris, the United States Supreme Court, citing Lingle v. Norge Div. Of Magic Chef Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed 410 (1988), a case brought under Section 301 of the Labor Relations Act ("LMRA"), held unanimously that "what determines whether an individual's State-law claim is preempted by the RLA is whether the claim involves rights and obligations that exist independent of the CBA." Hawaiian Airlines, Inc. V. Norris, 512 U.S. at ___, 114 S.Ct. at 2248 - 49. See also Mack v. Metro-North Commuter R.R., 876 F.Supp. 490, 493 (S.D.N.Y. 1994)

In addition, in Harris v. Hirsh, 186 N.Y.2d 207, 212-213, 630 N.Y.S. 2d 701, citing Lingle v. Norris Div. Of Magic Chef. Inc., supra; the New York Court of Appeals states that "Lingle instructs, the fact that State-law litigation might involve the same factual considerations involved in the arbitration of a contract dispute does not itself require preemption." The Harris Court, citing Hawaiian Airlines, Inc. v. Norris, supra; then held when resolution of the tort litigation hinges on 'purely factual questions' about an employee's conduct or an employer's conduct and motives, even if the conduct takes place during contractually authorized grievance procedures, no interpretation of the contract is required and thus the State litigation may proceed. Hawaiian Airlines, 512 U.S. at ___, 114 S.Ct. at 2249. See also Mack v. Metro-North Commuter R.R., 876 F.Supp. 490, 492

11

(S.D.N.Y. 1994). Furthermore, in deciding <u>Harris</u> the court stated "the Supreme Court made clear in <u>Hawaiian Airlines</u> that the mere need to consult or refer to the contract terms during State-court litigation does not render the State-law claim preempted." <u>Harris v. Hirsh</u>, 186 N.Y.2d at 212 (quoting <u>Hawaiian Airlines</u>, 512 U.S. at ___, 114 S.Ct. at 2248, n. 8). Rather the deciding factor must remain whether the meaning of the contract terms is the subject of the dispute. <u>Id</u>.

A.   **The Terms of the CBA Are Not the Subject of Plaintiffs' Claims**

Defendant contends that "the issue whether Metro-North can require an employee to undergo EAP treatment in lieu of disciplinary action cannot be decided absent a construct of the CBA and Defendant's Substance Abuse Policy." **(See Def's. Memo. at 12 - 13)** However, the Plaintiffs' herein are not challenging Defendant's authority to require Plaintiff to undergo EAP treatment in lieu of disciplinary action, neither is Plaintiffs' cause of action herein for breach of the CBA nor that the fitness-for-duty medical examination was without probable cause. **(See Def's. Memo. at 7)**.

Rather, Plaintiffs herein claim that Defendant and its EAP employees were negligent in conducting his fitness-for-duty medical examinations, and their negligence forced him to undergo in-patient and outpatient treatment for approximately one year for a substance abuse problem for which they had no evidence. **(See Exhibits 10, 11 and 14)** In addition, while Plaintiff was undergoing treatment for substance abuse, Defendant and its agents failed to treat his blood disease, of which it was aware, and as a result of Defendant's failure, Plaintiff's disease worsened causing him to be hospitalized immediately after Defendant released him from its in-patient treatment. **(See Exhibits 12 and 18)** Defendant then continued to harass and humiliate Plaintiff by threatening him with disciplinary action if he did not continue treatment as an outpatient at Gracie Square for alleged drug abuse, four times per week, in addition to his attending AA meetings four times per week and weekly counseling sessions with Defendant's EAP counselors. (See Exhibit O, pp. 838 – 845, 892 – 893;

Exhibit 6, Clark Depo. p. 18 lines 4 –10, p. 36 lines 10 – 12 and Exhibit 5, Sturgis Depo. p. 29, line 20 to p. 32 line 22)

The stress and fatigue that Plaintiff experienced because of his forced involvement in drug abuse treatment activities caused his blood disease to worsen and required him to be repeatedly re-hospitalized for his blood disease. **(See Exhibit F, pp. 3 - 4 attached to NLG Aff'd. of Def's. Mot.)** Thus, Plaintiffs' claims are not preempted because they deal with "purely factual questions" about Plaintiff's and Defendant's conduct and motives and even though the conduct may have taken place during CBA authorized grievance procedures, no interpretation of the CBA is required. Hawaiian Airlines, 512 U.S. at ___, 114 S.Ct. at 2249. See also Mack v. Metro-North Commuter R.R., 876 F.Supp. at 492; Harris v. Hirsh, 186 N.Y. 2d at 212.

Defendant also argues that "… the nature of the duties and obligations of the EAP cannot be defined without reference to, and interpretation of the CBA." **(See Def's. Memo. at 12)** However, in Hawaiian Airlines, Inc. v. Norris, supra, the Supreme Court specifically and unanimously rejected defendant's argument that plaintiff's claims were preempted because resort to the CBA was necessary in reaching a decision on plaintiff's claims. Mack v. Metro-North Commuter R.R., 876 F.Supp. at 493; Harris v. Hirsh, 186 N.Y. 2d at 212. The Supreme Court then made clear that the mere need to consult or refer to CBA during the State-court litigation does not render the State-law claim preempted. Id.

Defendant also contends that the court's reasoning in Mack v. Metro-North Commuter R.R., supra, compels dismissal of Plaintiffs' claims. However, contrary to Defendant's assertions the court's reasoning in Mack v. Metro-North Commuter R.R. supra, requires denial of Defendant's motion since, as in the case here, the court found that that plaintiff's tort claims as to whether defendant's conduct caused her to be a victim of emotional distress and whether she has been falsely imprisoned are squarely questions of fact to be decided by a jury and do not require interpretation of

a CBA, therefore, the claim was not preempted. See also 878 F.Supp 673; Mack v. Metro-North Commuter R.R., 876 F. Supp at 494.

Contrary to Defendant's claims in the instant matter, the meaning of the terms of the CBA is not the subject of the dispute herein since no actual CBA terms need to be construed to resolve Plaintiffs' claims herein.

Moreover, it is settled that Congress has specifically provided for a tribunal to interpret contracts embodying working agreements between carriers and their employees in order to finally settle labor disputes. However, where RLA is so obviously violated that sacrifice or obliteration of a right which Congress created to protect the interests of individuals or the public is clearly shown, a court of equity can, in a proper case intervene. Order of R. Conductors v. Pitney, 326 U.S. 561, 90 L Ed. 318, 66 S.Ct. 322, 17 BNA LRRM 722, 10 CCH LC 51218 reh den (1946) 327 U.S. 814, 90 L.Ed. 1038, 66 S.Ct. 525.

Hence, in Welby v. Consolidated Rail Corp., 671 F.Supp. 1015, 28 BNA WH Cas 680 (1987), the court denied defendant's motion to dismiss plaintiff's action for lack of subject matter jurisdiction over its employee claim that his illness resulted from improper and unsafe working conditions. As in the case at bar, defendant in Welby v. Consolidated Rail Corp. argued that its employee's claim constituted a minor labor dispute and was preempted under the RLA. However, the Welby Court in denying defendant's motion stated that "(1) because of the limited scope and competence of the Railway Act grievance procedures (2) all-encompassing provisions of the Federal Employees Liability Act ("FELA") and (3) plaintiff's complaint sounding in negligence, alleging failure to provide proper medical treatment, and asserting violation of express terms of Hours of Service Act, led to the conclusion that conduct and personal injury complained of in that case, is the type which Congress would have wanted to leave, concurrently or exclusively, to state or federal tort remedy." Id. at ___.

In the instant case the facts are similar to the facts in Welby v. Consolidated Rail Corp., supra, therefore, the court's reasoning in that case warrants denial of Defendant's instant motion.

**B. Plaintiff's Claim for the Intentional Infliction of Emotional Distress is Similarly Not Preempted by the RLA**

Defendant argues that in order to prove his sixth cause of action of intentional infliction of emotional distress ("IIED"), Plaintiff must show that Defendant's conduct, "in requiring Robinson to undergo treatment for substance abuse problem as a condition of maintaining his employment, was extreme and outrageous." **(Def's. Memo. at 13 - 14)**

However, in the instant case, the issue in Plaintiffs' sixth cause of action is not whether Defendant disciplined Plaintiff correctly but rather whether Defendant tortuously injured Plaintiff during the course of the fitness-for-duty medical examinations. While the propriety of the decision to require the fitness-for-duty medical examination may entail interpretation of the CBA, it does not necessarily follow that Defendant's conduct during and in connection with that examination "squarely implicates and requires interpretation of the collective bargaining agreement covering plaintiff's employment with defendant." Mack v. Metro-North Railroad, 878 F.Supp. 673, 676. In Mack v. Metro-North Railroad, supra, the court held that the CBA does not mention the conduct of a defendant's employees or agents during such medical examination and found that claims similar to the claims in the instant case turn on "purely factual inquiry" about conduct and motives that do not require interpretation of the CBA. Id. at 677.

In addition, the Mack Court, citing the Supreme Court, stated that that Court established that in the labor law context, a cause of action is exempted from preemption where (1) it is only the peripheral concern of the labor law and (2) affects historical state interests in protecting the health and well-being of its citizens. Farmer v. United Brotherhood of Carpenters & Joiners, 430 U.S. 290, 304-305, 97 S.Ct. 1056, 1065-1066, 51 L.Ed.2d 338 (1977). The Supreme Court also held that "[n]othing in the federal labor statutes protects or immunizes from state action violence or the threat

15